IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF UTAH, and LAST ENERGY, INC., ) ) ) | |
| Plaintiffs, ) ) ) | Case No. 6:24-cv-00507 |
| v. ) ) | |
| UNITED STATES NUCLEAR REGULATORY COMMISSION, ) ) ) | |
| Defendant. ) ) | |

## MOTION TO DISMISS

Nearly 70 years ago, in 1956, the Atomic Energy Commission ("AEC"), predecessor to Nuclear Regulatory Commission ("NRC"), promulgated the rule that Plaintiffs challenge in this case. That rule requires that an "apparatus, other than an atomic weapon, designed or used to sustain nuclear fission in a self-supporting chain reaction" would qualify as a "utilization facility" under the Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq*. ("AEA" or "the Act") and thus persons seeking to operate one must obtain a federal license. 10 C.F.R. § 50.2. Rather than working cooperatively with the NRC to address their objections to this longstanding and unremarkable rule by petitioning the agency to change it, Plaintiffs—Texas, Utah, and a Washington, D.C.-based company called Last Energy—initiated this lawsuit and ask this Court to declare in the first instance that their facilities pose no safety or proliferation concerns that require regulation and are thus "exempt" from NRC licensing requirements. *See* Prayer for Relief (C), Compl. at 75, ECF No. 1. Plaintiffs' claims are without merit and inconsistent with, among other things, comprehensive legislation that Congress just enacted to facilitate NRC's licensing of newer and smaller designs for reactors of the type described in the Complaint. *See, e.g.*, ADVANCE Act of 2024, Pub. L. No. 118-67, § 208(a)(1), 138 Stat. 1447 (2024) (requiring the NRC to "develop

risk-informed and performance-based strategies and guidance to license and regulate micro-reactors pursuant to section 103 of the Atomic Energy Act of 1954").

But this case presents no basis to consider the merits of those claims because they have been brought in the wrong court. The Administrative Orders Review Act, commonly referred to as the "Hobbs Act," confers *exclusive* jurisdiction upon the courts of appeals to determine the validity of "rules and regulations dealing with the activities of [NRC] licensees," 42 U.S.C. § 2239(a)(1)(A); (b). 28 U.S.C. § 2342(4). Because Plaintiffs' claims fall squarely within the Hobbs Act's grant of exclusive jurisdiction to the courts of appeals, this Court lacks authority to consider Plaintiffs' challenge. And even if the Hobbs Act somehow did not apply, Texas's claims are barred by the APA statute of limitations. Because Texas's presence in this lawsuit is Plaintiffs' only basis for venue, its dismissal means that venue does not lie in this district, independently requiring dismissal. The Court should dismiss the Complaint.

## BACKGROUND

Congress enacted the Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.*, to "encourage[] the private sector" to develop "atomic energy for peaceful purposes under a program of federal regulation and licensing." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 207 (1983) (citation omitted); *see* 42 U.S.C. § 2013(a),(b),(d). The Act generally prohibits all persons from engaging in certain activities relating to the civilian use of nuclear materials and energy absent a license issued by the NRC (created in 1974 to assume all licensing and regulatory functions from the predecessor AEC), while authorizing the agency to license such activities as long as they comply with the agency's health, safety, common-defense, and security standards. *See* 42 U.S.C. §§ 2073, 2077, 2093, 2099, 2111, 2131, 2133, 2134, 5842.

Of particular relevance here, the Act confers authority upon the NRC to issue licenses for persons to operate "utilization facilities" both for commercial and for research and development purposes. *Id.* §§ 2133, 2134. The Act defines a "utilization facility" as

> (1) any equipment or device, except an atomic weapon, determined by rule of the Commission to be capable of making use of special nuclear material in such quantity as to be of significance to the common defense and security, or in such

> manner as to affect the health and safety of the public, or peculiarly adapted for making use of atomic energy in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission.

*Id*. § 2014(cc).  Exercising its authority under this provision, the AEC determined in 1956 (and the NRC has adhered to the definition since its inception) that the types of equipment falling within this definition include "any nuclear reactor other than one designed or used primarily for the formation of plutonium or U[ranium]-233."  21 Fed. Reg. 355, 356 (Jan. 19, 1956) (codified at 10 C.F.R. § 50.2).[1]  The 1956 rule provides that a license is required to use a utilization facility, *id*. (codified at 10 C.F.R. § 50.10), unless the agency exempts the person from that licensing requirement "as authorized by law" including the AEA, upon a determination that the exemption "will not endanger life or property or the common defense and security[,]" *id*. (codified at 10 C.F.R. § 50.12).

Plaintiffs in this case challenge the NRC's definition of "utilization facility" under the Administrative Procedure Act ("APA"), asserting, generally, that the agency has failed to differentiate between the smaller reactors referenced in the Complaint—including research reactors operated at universities within Texas and Utah and "small modular reactors" designed by Last Energy—and larger-scale facilities that pose a greater radiological threat to public health, safety, and security.  They seek a declaratory judgment declaring that the agency's rule defining the term "utilization facility" is invalid and seek exemptions from NRC requirements governing utilization facilities for the university reactors as well for Last Energy's reactor designs.

## LEGAL STANDARDS

Defendants move to dismiss for lack of subject-matter jurisdiction, for failure to state a claim upon which relief can be granted, and for improper venue, under Federal Rule of Civil Procedure 12(b).  "Motions filed under Rule 12(b)(1) . . .  allow a party to challenge the subject matter jurisdiction of the district court to hear a case."  *Ramming v. United States*, 281 F.3d 158,

---

[1] The term "nuclear reactor" is in turn defined as "an apparatus, other than an atomic weapon, designed or used to sustain nuclear fission in a self-supporting chain reaction."  10 C.F.R. § 50.2.

161 (5th Cir. 2001).  A "plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id*.  It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record[.]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted).

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  "A statute of limitations may support dismissal under Rule 12(b)(6)[.]" *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Rule 12(b)(3) authorizes the court "to dismiss an action where venue in that court is improper." *Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp.2d 631, 633 (E.D. Tex. 2006).  "Once a defendant raises a 12(b)(3) motion, the burden of sustaining venue lies with the plaintiff." *Id*.

## ARGUMENT

### I.    The Hobbs Act Provides the Courts of Appeals with Exclusive Jurisdiction Over Plaintiffs' Challenge.

Although "the normal default rule is that persons seeking review of agency action go first to district court" under the APA, that default rule is superseded "when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (citations omitted); *see also Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010) (When Congress provides "[s]pecific grants of jurisdiction to the courts of appeals[,]" those specific grants "override general grants of jurisdiction to the district courts.").  The Hobbs Act constitutes such a direct-review statute.  It vests in the courts of appeals the "*exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [NRC] made reviewable by [42 U.S.C. § 2239]."  28 U.S.C. § 2342(4) (emphasis added).  The challenged 1956 agency action defining the term "utilization facility" falls within that category.  Specifically, it constitutes a "final order entered in[,]" 42 U.S.C. § 2239(b)(1), a "proceeding for the issuance . . . of rules and regulations dealing with the activities of licensees," *id*. § 2239(a)(1)(A).  Because the Hobbs Act

vests the courts of appeals with exclusive jurisdiction to review such final orders, 28 U.S.C. §§ 2342(4), 2344, dismissal is warranted.

This case is easily resolved by application of the exclusive-jurisdiction-conferring provisions of the Hobbs Act and the AEA. The agency's definition of what constitutes a "utilization facility" for which a license is required under the Atomic Energy Act, promulgated by rule in 1956, is unquestionably a rule "dealing with the activities of licensees." 42 U.S.C. § 2239(a)(1)(A). It therefore is solely challengeable in the courts of appeals pursuant the Hobbs Act. 28 U.S.C. § 2342(4); 42 U.S.C. § 2239(b). The APA is "not a proper vehicle for circumventing the special statutory review process" created by the Hobbs Act. *Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165, 168 (5th Cir. 1989).

Nor can it credibly be argued, as Plaintiffs may, that the NRC's rules and regulations do not constitute reviewable "orders" under the Hobbs Act. First, the "exclusive jurisdiction" of the courts of appeals to review AEC "final orders" under 28 U.S.C. § 2342(4) certainly encompasses agency actions promulgating rules. That provision encompasses "all final orders of the [AEC] made reviewable by section 2239 of title 42." 28 U.S.C. § 2342(4). Section 2239 is divided into two subsections. Subsection (a), among other things, requires NRC hearings "in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees[.]" 42 U.S.C.§ 2239(a)(1)(A). And subsection (b), in turn, makes *"any"* final order in *"any"* of those proceedings reviewable. *Id.* § 2239(b)(1) (emphasis added). Section 2239(b) undoubtedly contemplates a "final order" being issued in each of the types of proceedings in subsection (a), including proceedings for the issuance of rules "dealing with the activities of licensees," 42 U.S.C § 2239(a). Therefore, "final orders" in rulemaking proceedings are among those "made reviewable by section 2239" and thus subject to "exclusive" Hobbs Act jurisdiction. 28 U.S.C. § 2342(4).

Moreover, the Supreme Court has held that Hobbs Act exclusive jurisdiction encompasses challenges to agency actions promulgating rules. In *United States v. Storer Broadcasting Company*, 351 U.S. 192 (1956), a broadcasting company challenged a Federal Communications

Commission ("FCC") regulation limiting the number of broadcast stations that may be owned by one company. The broadcasting company had sought judicial review of the rule in the D.C. Circuit under the Hobbs Act. *Id*. at 195. The Court held that Hobbs Act jurisdiction to seek review of the agency action adopting the "challenged regulations" was proper. *Id*. at 197.[2] Justice Harlan alone held the dissenting view that not every agency "action in the form of a regulation [is] considered to be an 'order[.]'" *Id*. at 207. And insofar as Plaintiffs insist that Justice Harlan's dissenting view was the correct one, "irrational consequences" follow. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 742 (1985) (describing as "irrational" the notion that "final orders in . . . informal [NRC] rulemaking authorized in § 2239(a) would be reviewed initially in the district court").

History confirms that Hobbs Act exclusive jurisdiction over "final orders" encompasses facial challenges to agency actions promulgating rules. Under the pre-Hobbs Act scheme for judicial review of "orders" made by agencies now subject to the Hobbs Act, the Supreme Court construed review of "orders" to encompass review of agency actions promulgating rules. The Urgent Deficiencies Act conferred on specially constituted district courts "exclusive jurisdiction" over suits to "enjoin, set aside, annul, or suspend" specified agency "order[s]." Commerce Court Act, Pub. L. No. 61-218, 36 Stat. 539-540 (1910) (vesting that jurisdiction in a special commerce court); *see* Urgent Deficiencies Act, Pub. L. No. 63-32, 38 Stat. 208, 219-220 (1913) (abolishing the commerce court and transferring its jurisdiction to three-judge district courts); *see also* 28 U.S.C. 44-48 (1934).

In applying that exclusive-jurisdiction provision, the Supreme Court held that "regulations . . . are orders reviewable under the Urgent Deficiencies Act." *Columbia Broad. Sys. v. United States*, 316 U.S. 407, 417 (1942) ("*CBS*"). The Court also construed provisions of a statute applying the Urgent Deficiencies Act review procedures to suits seeking judicial review of "any order" of the FCC. 47 U.S.C. § 402(a) (1940). The Court held that agency actions promulgating

---

[2] At the time of the Supreme Court's decision in *Storer Broadcasting*, the Hobbs Act provisions were codified at 5 U.S.C. § 1031, *et seq. Compare* 5 U.S.C. § 1034 (1952), *with* Pub. L. No. 81-901 § 2, 64 Stat. 1129 (1950), *and* 28 U.S.C. § 2342.

regulations "are appropriately the subject of attack [as orders] under [those] provisions . . . and the Urgent Deficiencies Act." *CBS*, 316 U.S. at 418-19.

The scope of a reviewable "order" under the Hobbs Act carries forward these interpretations. Congress enacted the Hobbs Act in 1950, following a request by Chief Justice Stone to reform the judicial review procedures that had applied under the Urgent Deficiencies Act, replacing specially constituted district court review with direct review in the courts of appeals. *See* H.R. Rep. No. 81-2122 (1950), *reprinted in* 1950 U.S.C.C.A.N. 4303. The Supreme Court's construction of the scope of a reviewable "order" under the Urgent Deficiencies Act thus provides "[t]he legal 'backdrop against which Congress enacted'" the Hobbs Act. *See Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020) (citation omitted). And "when Congress 'adopt[s] the language used in [an] earlier act,' [courts] presume that Congress 'adopted also the construction given by [the Supreme] Court to such language, and made it a part of the enactment.'" *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 270 (2020) (citation omitted). Congress brings "the old soil with it." *Stokeling v. United States*, 586 U.S. 73, 80 (2019) (citation omitted); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 322-26 (2012) (describing prior-construction canon).

Other provisions of the Hobbs Act confirm that reviewable orders may encompass agency actions promulgating rules. The statute provides that: "[o]n the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules." 28 U.S.C. § 2344. If "a final order reviewable under this chapter" only encompassed the final disposition of adjudications, then notice by service on the parties would have been sufficient. *Id*. Congress's inclusion of service "or publication" shows that it

7

contemplated agency actions, like rules, that use publication in the Federal Register to provide notice to those affected. *See* 44 U.S.C. § 1507; 5 U.S.C. § 553.[3]

Consistent with *CBS*, *Storer Broadcasting*, *Florida Power & Light*, and for other reasons as well, it is "blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules." *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1129 (D.C. Cir. 2015); *see also Fla. Power & Light*, 470 U.S. at 745 ("Absent a firm indication that Congress intended to locate initial APA review of agency action in the district courts, we will not presume that Congress intended to depart from the sound policy of placing initial APA review in the court of appeals."); *Texas v. United States*, 749 F.2d 1144, 1146 (5th Cir. 1985) (quoting *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958)) (The Hobbs Act's "statutory time limit restricting judicial review of [agency] action is applicable . . . to cut off review directly from the order promulgating a rule."). And no countervailing indicia exist here. On the contrary, again, the "exclusive jurisdiction" of the courts of appeals to review NRC "final orders" under 28 U.S.C. § 2342(4) certainly encompasses agency

---

[3] In 1975, Congress provided for Hobbs Act jurisdiction over challenges to Interstate Commerce Commission ("ICC") "rules, regulations, or final orders[.]" Pub. L. No. 93-584, § 4, 88 Stat. 1917 (1975) (codified at 28 U.S.C. § 2342(5) (changed to the Surface Transportation Board in 1995)). Since then, Congress expanded Hobbs Act jurisdiction to encompass challenges to "all rules, regulations, or final orders[,]" Judicial Improvements Act of 1985, Pub. L. No. 99-336, § 5, 100 Stat. 633, 638 (1986) (codified at 28 U.S.C. § 2342(3)), or "all final agency actions," Rail Safety Enforcement and Review Act, Pub. L. No. 102-365, § 5, 106 Stat. 972, 975 (1992) (codified at 28 U.S.C. § 2342(7)), of other agencies. These enactments in no way repudiate the Supreme Court's prior construction of Hobbs Act reviewable orders as encompassing agency actions promulgating rules. "Legislative revision of law clearly established by judicial opinion ought to be by express language or by unavoidably implied contradiction." Scalia & Garner, Reading Law 331 (2012). And no such express language or unavoidably implied contradiction exists here. Rather, Congress merely "made specific what is already assumed by litigants and the courts—rules and regulations of the ICC are reviewed in the same judicial tribunal which has jurisdiction to review adjudicated orders of that agency." S. Rep. No. 93-500, 93d Cong., 1st Sess. 4 (1973). *See also Conoco, Inc. v. Skinner*, 781 F. Supp. 298, 311 (D. Del. 1991) (explaining that "Congress wanted to sharpen the intended coverage of the Hobbs Act by explicitly listing the previously inferred terminology"), *aff'd* 970 F.2d 1206 (3d Cir. 1992). Again, a contrary view is undermined by 28 U.S.C. § 2344, which refers to all reviewable Hobbs Act agency actions as "final order[s]" regardless of which paragraph of 28 U.S.C. § 2342 they fall under.

actions promulgating rules given Congress's explicit incorporation of the final disposition of agency "proceeding[s] for the issuance or modification of rules and regulations dealing with the activities of licensees," 42 U.S.C § 2239(a). *Supra* at p. 5.

The conclusion that the Hobbs Act applies to the final disposition of NRC rulemaking proceedings comports with the conclusion of *all* courts of appeals to have considered the issue in connection with challenges to NRC rules. *See, e.g.*, *Public Watchdogs v. S. Cal. Edison Co.*, 984 F.3d 744, 758 (9th Cir. 2020) (district court lacked jurisdiction to review challenge, issued by NRC through rulemaking, to "Certificate of Compliance" for design of spent nuclear fuel storage system); *Citizens Awareness Network v. United States*, 391 F.3d 338, 346 (1st Cir. 2004) (rules concerning practice in NRC adjudicatory proceedings reviewable in courts of appeals); *Gage v. AEC*, 479 F.2d 1214, 1218 (D.C. Cir. 1973) (noting, in deeming to rule subject to Hobbs Act, that "[t]he clear words of the statutes involved make no distinction between orders which promulgate rules and orders in adjudicative proceedings"); *see also Commonwealth Edison Co. v. NRC*, 830 F.2d 610, 615 (7th Cir. 1987) (noting "the growing understanding that regulations and rules were reviewable 'orders' under the Hobbs Act"); *NRDC v. NRC*, 666 F.2d 595, 601 n.40 (D.C. Cir. 1981) (parties agreed that challenge to NRC regulations time-barred under the Hobbs Act); *Westinghouse Elec. Corp. v. NRC*, 598 F.2d 759, 765 n.21 (3d Cir. 1979) (finding "erroneous" the "premise that the provisions governing review of administrative orders adopt the same definition of the term, 'order' as found in the APA"); *NRDC v. NRC*, 539 F.2d 824, 836 (2d Cir. 1976) ("[N]o distinction exists for review purposes between agency adjudications and other pronouncements, such as rulemaking."), *vacated as moot*, 434 U.S. 1030 (1978); *Siegel v. AEC*, 400 F.2d 778, 785 (D.C. Cir. 1968); *cf. Nuclear Energy Inst. Inc. v. EPA*, 373 F.3d 1251, 1264-65 (D.C. Cir. 2004) (finding Hobbs Act jurisdiction to review promulgation of rule by Environmental Protection Agency under authority transferred from AEC).

Moreover, the Fifth Circuit has recognized that the Hobbs Act provides for jurisdiction in the courts of appeals over challenges to NRC regulations.  In *Mississippi Power & Light Company*

*v. Nuclear Regulatory Commission*, 601 F.2d 223 (5th Cir. 1979), the court exercised original jurisdiction over a challenge to an NRC "final rule" establishing a fee schedule. *Id*. at 226. Likely because it is "blackletter administrative law[,]" *N.Y. Republican State Comm.*, 799 F.3d at 1129, the court did not even question its jurisdiction to review the final rule. *See Commonwealth Edison*, 830 F.2d at 613 (noting that while the *Mississippi Power & Light* court did not discuss "initial review jurisdiction, [it was] of course under the same obligation [as any court] to satisfy [itself] of subject-matter jurisdiction before proceeding to the merits").

District courts have uniformly reached the same conclusion as well. *See Izaak Walton League of Am. v. Schlesinger*, 337 F. Supp. 287, 291 (D.D.C. 1971) ("The revised . . . rules and regulations in issue specify the procedures involved in the issuance of operating licenses. . . . A review of [the revisions], in accordance with the statute, lies exclusively in the Court of Appeals."), *vacated by settlement*, 2 Envtl. L. Rep. 20,388 (Dec. 17, 1971); *see also Nader v. Ray*, 363 F. Supp. 946, 955 (D.D.C. 1973) (similar); *accord Util. Workers Union of Am. v. NRC*, 664 F. Supp. 136, 137 (S.D.N.Y. 1987); *Sunflower Coal. v. NRC*, 534 F. Supp. 446, 448 (D. Colo. 1982).

In short, Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction because they challenge a "final order" issued in a "proceeding for the issuance" of an NRC "rule[] [or] regulation[] dealing with the activities of licensees," 42 U.S.C. § 2239(a)(1)(A), (b)(1), and such challenges are ones over which Congress has conferred "exclusive jurisdiction" in the courts of appeals, 28 U.S.C. §§ 2342, 2343. Plaintiffs may not "circumvent[] . . . the exclusive jurisdiction set forth by Congress." *Ligon*, 614 F.3d at 157 n.4.

## II.    Even if the Court Had Jurisdiction, Plaintiffs Cannot Establish Venue Based Solely on Texas's Residence Because Texas is not a Proper Plaintiff.

### A.    Texas's Claims are Time-Barred.

Even if the Hobbs Act did not preclude this lawsuit, the six-year statute of limitations applicable to the APA would bar Texas's claims.  *See* 28 U.S.C. § 2401(a) (stating "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").[4]

Parties can challenge regulations in several ways.  Those include a facial challenge, *i.e.* a claim that the regulation is invalid in whole or in part, or as an as-applied challenge, *i.e.*, defending against an enforcement action on the grounds that the applicable regulation is invalid.  *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 823-24 (2024); *Texas*, 749 F.2d at 1146.  Texas brings a facial challenge to the agency's 1956 determination that a "utilization facility" includes "any nuclear reactor other than one designed or used primarily for the formation of plutonium or U[ranium]-233."  21 Fed. Reg. at 356.  Compl. ¶¶ 191-232.  Texas's claims do not arise in the context of judicial review of any NRC order applying that rule.  *See Texas*, 749 F.2d at 1146.

Texas's right of action accrued for purposes of the APA statute of limitations when it first had a right to bring a suit challenging the regulation, *Corner Post*, 603 U.S. at 809-13, either when the rule was published in 1956, or, at the latest, when Texas began operating a nuclear reactor in

---

[4] Defendants' argument that Texas is not a venue-creating Plaintiff because its claims are time-barred by the APA statute of limitations is made in the alternative should the Court conclude that the Hobbs Act does not divest the Court of jurisdiction over Plaintiffs' claims.  To be sure, Plaintiffs' claims would also be time-barred even if they had been brought in the courts of appeals under the Hobbs Act, as they were not raised within sixty days of the promulgation of the agency's rule.  28 U.S.C. § 2344; *Texas*, 749 F.2d at 1146; *Chem-Haulers, Inc. v. United States*, 536 F.2d 610, 613 (5th Cir. 1976).  Plaintiffs could not find safe harbor from that sixty-day window by relying on *Corner Post v. Board of Governors of the Federal Reserve System*.  603 U.S. 799 (2024).  The Supreme Court made clear in *Corner Post* that its analysis did not apply to statutes of *repose* "like the Hobbs Act," as opposed to statutes of *limitations* such as those set forth in the APA.  *Id.* at 812-13; *see also San Luis Obispo Mothers for Peace v. NRC*, No. 23-3884, 2025 WL 233640, at *1 (9th Cir. Jan. 17, 2025) (quoting *Corner Post*, 603 U.S. at 812-13) ("As a 'defendant-protective statute of repose,' the Hobbs Act bars 'any suit that is brought [after the ] specified time frame . . . even if this period ends before the plaintiff has suffered a resulting injury.'").

1957 that was subject to the challenged rule.  *See* Compl. ¶ 102.  Texas's own allegations demonstrate that its right to bring any facial challenge to the regulatory definition of "utilization facility" plainly accrued long before 2018, six years before this action was filed.  *See id*. ¶ 21 (describing the subject of this suit as the definition of "utilization facility" issued in the 1950s); *id*. ¶¶ 101-102 (explaining that Texas has maintained operating licenses for three reactors since 1992, 1961, and 1957,[5] respectively).  Therefore, Texas's claims should be dismissed because they are time-barred.[6]

Notwithstanding the untimeliness of the Complaint (whether due to the APA statute of limitations or the time specified in the Hobbs Act), Plaintiffs are not foreclosed from raising their arguments concerning the agency's definition of "utilization facility" and seeking judicial review of the agency's resolution of their arguments.  Plaintiffs may petition the NRC, arguing that the agency's definition of "utilization facility" is contrary to law.  10 C.F.R. §§ 2.800-2.818.  And if dissatisfied with the result of such a petition, they could file a petition for review of the decision challenging the legal interpretation underlying the rule.  *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 528-33 (2007); *NRDC*, 666 F.2d at 602 (courts "scrutinize[] regulations immune from direct review by reviewing the denial of a subsequent rulemaking petition which challenged the regulations on demonstrable grounds of substantive invalidity"); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (explaining that "courts decide legal questions by applying their own judgment" arising on judicial review of agency actions).  Or they could seek an exemption from any or all of the agency's licensing requirements for utilization facilities, with attendant opportunities for judicial review if their request is denied.  *See* 10 C.F.R. § 50.12.  But as raised here, Texas's claims are time-barred and should be dismissed.

---

[5] The Complaint incorporates by reference NRC websites that include the date that each operating license was issued.  Compl. ¶¶ 101-102.

[6] The same is true for Utah's research reactor, which has been operating under an NRC license since 1975.  Compl. ¶ 103.

**B.  Venue is Improper in this District Because Texas's Claims are Time Barred.**

Once Texas's claims are dismissed, the rest follows as a matter of course.  Rule 12(b)(3) calls for dismissal of an action if venue is "improper."  *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013).  And where, as here, the case is brought against "an agency of the United States," venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). "Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff."  *Langton v. Cbeyond Commc'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003); *accord* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3826 (4th ed. 2024).

Plaintiffs' only theory of venue for its APA claims depends entirely on Texas's residence. *See* Compl. ¶ 32. Accordingly, because Texas's claims are time barred, there is no basis for venue in this district: no defendant resides here, *see* 28 U.S.C. § 1391(e)(1)(A); none of the "events or omissions giving rise to the claim occurred" here, *id*. § 1391(e)(1)(B); and no (proper) plaintiff resides here, *see id*. § 1391(e)(1)(C).

A plaintiff cannot be joined for the purpose of creating venue where it would not otherwise exist.  *See Miller v. Albright*, 523 U.S. 420, 426-27 (1998) (op. of Stevens, J.) ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party. Because venue in Texas was therefore improper, *see* 28 U.S.C. § 1391(e), the court transferred the case to the District Court for the District of Columbia, the site of the Secretary's residence."); *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202-05 (11th Cir. 2018) (transferring case where the only party that satisfied venue failed to establish standing); *Immigrant Assistance Project v. INS*, 306 F.3d 842, 867 n.20 (9th Cir. 2002) (analyzing standing of particular plaintiff was "important because it is the only plaintiff . . . who is a resident of Washington and on whom, therefore, venue

13

in the Western District of Washington could be based"); *Missouri v. U.S. Dep't of Educ.*, No. CV 224-103, 2024 WL 4374124, at *4 (S.D. Ga. Oct. 2, 2024) ("[w]ithout standing, Georgia cannot provide the proper venue for suit"); *Dayton Area Chamber of Com. v. Becerra*, No. 3:23-cv-156, 2024 WL 3741510, at *8 (S.D. Ohio Aug. 8, 2024) ("Because the Court has determined that the Dayton Area Chamber must be dismissed due to lack of standing, venue is no longer proper in the Western Division of the Southern District of Ohio."); *Kansas v. Garland*, No. 2:24-CV-00088, 2024 WL 2384611, at *3 (E.D. Ark. May 23, 2024) ("Having found that the State of Arkansas does not have standing to proceed in this action, venue is improper in this Court."); *Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.*, 711 F. Supp. 3d 686, 693 (W.D. Mich. 2024) (after concluding that the venue-creating plaintiff "lacks standing," holding that "the Western District of Michigan is no longer" an appropriate venue); *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party."); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1304 (N.D. Ala. 2003) ("Venue is proper in this court because at least one Alabama plaintiff had standing."); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3815 (4th ed. 2024) ("[V]enue cannot be based on the joinder of a plaintiff" that has been added "for the purpose of creating venue in the district.").

If that were not the rule, then any plaintiff could enlist any resident of any venue with a time-barred claim to serve as a nominal plaintiff, solely to circumvent venue requirements—a result that would encourage forum shopping and undermine the federal venue statute. Accordingly, upon dismissal of Texas's claims, the entire case should be dismissed for lack of venue.[7]

---

[7] Venue is improper if Texas is an improper Plaintiff for any reason.  For example, if the Court were to conclude that, for some reason, only Texas's claims are within the exclusive jurisdiction of the courts of appeals under the Hobbs Act, venue would not be proper in this district to address any other Plaintiff's claims.

**CONCLUSION**

For the reasons stated above, the Complaint should be dismissed.

Dated: March 17, 2025                    Respectfully submitted,

                                         YAAKOV M. ROTH
                                         Acting Assistant Attorney General

                                         JOSEPH E. BORSON
                                         Assistant Branch Director

                                         */s/ Liam C. Holland*
                                         LIAM C. HOLLAND
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, D.C. 20005
                                         Tel.: (202) 514-4964
                                         Fax: (202) 616-8470
                                         E-mail: Liam.C.Holland@usdoj.gov

                                         *Attorneys for Defendant*