IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| STATE OF TEXAS, STATE OF UTAH, and LAST ENERGY, INC., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES NUCLEAR REGULATORY COMMISSION, <br><br> Defendant. | Case No. 6:24-cv-00507 |

## MOTION TO DISMISS AMENDED COMPLAINT

Nearly 70 years ago, in 1956, the Atomic Energy Commission ("AEC"), predecessor to Nuclear Regulatory Commission ("NRC" or "Commission"), promulgated the rule that Plaintiffs challenge in this case. In adopting that rule, the NRC reasonably and unremarkably determined that an apparatus designed to carry out a self-sustaining nuclear fission chain reaction is capable of affecting the health and safety of the public—and that persons seeking to operate such an apparatus must obtain a federal license absent an exemption. 21 Fed. Reg. 355, 356 (Jan. 19, 1956) (codifying 10 C.F.R. §§ 50.2, 50.10, 50.12). *See also* 42 U.S.C. § 2014(cc).

Rather than working cooperatively with the NRC to address their objections to this longstanding rule by petitioning the agency to change it, Plaintiffs—Texas, Utah, and a Washington, D.C.-based company called Last Energy—initiated this lawsuit and asked this Court to declare in the first instance that their facilities pose no safety or proliferation concerns that require regulation and are thus "exempt" from NRC licensing requirements. *See* Prayer for Relief (C), Compl. at 75, ECF No. 1.

Those Plaintiffs have now filed an Amended Complaint seeking to join additional claims for relief from the NRC by five additional Plaintiffs. Am. Compl., ECF No. 10. The Amended Complaint includes demands that this Court determine in the first instance that additional entities

operating or intending to operate nuclear reactors far outside this district pose no safety or proliferation concerns and are thus entitled to judicially-created "exemptions" from the Atomic Energy Act of 1954, 42 U.S.C. § 2011, *et seq*. ("AEA" or "the Act"). *See* Prayer For Relief (C)-(F), Am. Compl. at 93-94. Plaintiffs' claims are without merit and inconsistent with, among other things, comprehensive legislation that Congress enacted only last year to facilitate NRC's licensing of newer and smaller designs for reactors of the type described in the Amended Complaint within the strictures of the Atomic Energy Act. *See, e.g.*, ADVANCE Act of 2024, Pub. L. No. 118-67, § 208(a)(1), 138 Stat. 1447 (2024) (requiring the NRC to "develop risk-informed and performance-based strategies and guidance to *license and regulate* micro-reactors pursuant to section 103 of the Atomic Energy Act of 1954") (emphasis added).

But this case presents no basis to consider the merits of those claims because they have been brought in the wrong court. The Administrative Orders Review Act, commonly referred to as the "Hobbs Act," confers *exclusive* jurisdiction upon the courts of appeals to determine the validity, 28 U.S.C. § 2342(4) of "rules and regulations dealing with the activities of [NRC] licensees," 42 U.S.C. § 2239(a)(1)(A); *see also* 42 U.S.C. § 2239(b). Because Plaintiffs' claims fall squarely within the Hobbs Act's grant of exclusive jurisdiction to the courts of appeals, this Court lacks authority to consider Plaintiffs' challenge. And even if the Hobbs Act somehow did not apply, Texas's claims are barred by the APA statute of limitations. Because Texas's presence in this lawsuit is Plaintiffs' only basis for venue, its dismissal means that venue does not lie in this district, independently requiring dismissal. The Court should dismiss the Amended Complaint.

## BACKGROUND

Congress enacted the Atomic Energy Act of 1954, 42 U.S.C. § 2011 *et seq.*, to "encourage[] the private sector" to develop "atomic energy for peaceful purposes under a program of federal regulation and licensing." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 207 (1983) (citation omitted); *see* 42 U.S.C. § 2013(a),(b),(d). The Act generally prohibits all persons from engaging in certain activities relating to the civilian use of

nuclear materials and energy absent a license issued by the NRC (created in 1974 to assume all licensing and regulatory functions from the predecessor AEC), while authorizing the agency to license such activities as long as they comply with the agency's health, safety, common-defense, and security standards. *See* 42 U.S.C. §§ 2073, 2077, 2093, 2099, 2111, 2131, 2133, 2134, 5842.

Of particular relevance here, the Act confers authority upon the NRC to issue licenses for persons to operate "utilization facilities" both for commercial and for research and development purposes. *Id*. §§ 2133, 2134. The Act defines a "utilization facility" as

> (1) any equipment or device, except an atomic weapon, determined by rule of the Commission to be capable of making use of special nuclear material in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public, or peculiarly adapted for making use of atomic energy in such quantity as to be of significance to the common defense and security, or in such manner as to affect the health and safety of the public; or (2) any important component part especially designed for such equipment or device as determined by the Commission.

*Id*. § 2014(cc). Exercising its authority under this provision, the AEC determined in 1956 (and the NRC has adhered to the definition since its inception) that the types of equipment falling within this definition include "any nuclear reactor other than one designed or used primarily for the formation of plutonium or U[ranium]-233." 21 Fed. Reg. 355, 356 (Jan. 19, 1956) (codified at 10 C.F.R. § 50.2). The term "nuclear reactor" is in turn defined as "an apparatus, other than an atomic weapon, designed or used to sustain nuclear fission in a self-supporting chain reaction." *Id.* (codified at 10 C.F.R. § 50.2). The 1956 rule provides that a license is required to use a utilization facility, *id*. (codified at 10 C.F.R. § 50.10), unless the agency exempts the person from that licensing requirement "as authorized by law" including the AEA, upon a determination that the exemption "will not endanger life or property or the common defense and security[,]" *id*. (codified at 10 C.F.R. § 50.12).

Plaintiffs in this case challenge the NRC's definition of "utilization facility" under the Administrative Procedure Act ("APA"), asserting, generally, that the agency has failed to differentiate between the smaller reactors referenced in the Amended Complaint—including research reactors operated at universities within Texas, Utah, and Florida, and "small modular

3

reactors" designed by Last Energy, Deep Fission, and Valar Atomics—and larger-scale facilities that pose a greater radiological threat to public health, safety, and security. They seek a declaratory judgment declaring that the agency's rule defining the term "utilization facility" is invalid and seek exemptions from NRC requirements governing utilization facilities for the university reactors as well for reactor designs by Last Energy, Deep Fission, and Valar Atomics.

## STATEMENT OF ISSUES

(1)    Does the Hobbs Act provide the courts of appeals with exclusive jurisdiction over Plaintiffs' challenge. <u>Answer:</u> YES.

(2)    In the alternative, is venue proper in this district based on Texas's time-barred claims. <u>Answer:</u> NO.

## LEGAL STANDARDS

Defendants move to dismiss for lack of subject-matter jurisdiction, for failure to state a claim upon which relief can be granted, and for improper venue, under Federal Rule of Civil Procedure 12(b). "Motions filed under Rule 12(b)(1) . . . allow a party to challenge the subject matter jurisdiction of the district court to hear a case." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A "plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* It is "presume[d] that federal courts lack jurisdiction unless the contrary appears affirmatively from the record[.]" *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006) (citation omitted).

"Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law." *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). "A statute of limitations may support dismissal under Rule 12(b)(6)[.]" *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003).

Rule 12(b)(3) authorizes the court "to dismiss an action where venue in that court is improper." *Norsworthy v. Mystik Transp., Inc.*, 430 F. Supp.2d 631, 633 (E.D. Tex. 2006). "Once a defendant raises a 12(b)(3) motion, the burden of sustaining venue lies with the plaintiff." *Id.*

4

# ARGUMENT

**I.    The Hobbs Act Provides the Courts of Appeals with Exclusive Jurisdiction Over Plaintiffs' Challenge.**

Although "the normal default rule is that persons seeking review of agency action go first to district court" under the APA, that default rule is superseded "when a direct-review statute specifically gives the court of appeals subject-matter jurisdiction to directly review agency action." *Am. Petroleum Inst. v. SEC*, 714 F.3d 1329, 1332 (D.C. Cir. 2013) (citations omitted); *see also Ligon v. LaHood*, 614 F.3d 150, 154 (5th Cir. 2010) (When Congress provides "[s]pecific grants of jurisdiction to the courts of appeals[,]" those specific grants "override general grants of jurisdiction to the district courts."). The Hobbs Act constitutes such a direct-review statute. It vests in the courts of appeals the "*exclusive* jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the [NRC] made reviewable by [42 U.S.C. § 2239]." 28 U.S.C. § 2342(4) (emphasis added). The challenged 1956 Commission action defining the term "utilization facility" falls within that category. Specifically, it constitutes a "final order entered in[,]" 42 U.S.C. § 2239(b)(1), a "proceeding for the issuance . . . of rules and regulations dealing with the activities of licensees," *id*. § 2239(a)(1)(A). *See* 21 Fed. Reg. at 355 (stating that applicable regulations are "hereby amended" to include challenged definition of "utilization facility").

This case is easily resolved by application of the exclusive-jurisdiction-conferring provisions of the Hobbs Act and the AEA. The agency's definition of a "utilization facility" for which a license is required under the Atomic Energy Act absent exemption, promulgated by rule in 1956, is unquestionably a rule "dealing with the activities of licensees." 42 U.S.C. § 2239(a)(1)(A). It therefore is solely challengeable in the courts of appeals pursuant the Hobbs Act. 28 U.S.C. § 2342(4); 42 U.S.C. § 2239(b). The APA is "not a proper vehicle for circumventing the special statutory review process" created by the Hobbs Act. *Bywater Neighborhood Ass'n v. Tricarico*, 879 F.2d 165, 168 (5th Cir. 1989). Plaintiffs' assertions to the contrary are without merit. Am. Compl. ¶ 46.

### A. Hobbs Act Exclusive Jurisdiction Encompasses Challenges to Final AEC or NRC Actions Promulgating Rules.

Plaintiffs wrongly assert that this case does not involve a reviewable "order" under the Hobbs Act. Am. Compl. ¶ 46 ("[T]he challenged regulation is not an 'order,' but a rule.'"). But the "exclusive jurisdiction" of the courts of appeals to review AEC "final orders" under 28 U.S.C. § 2342(4) encompasses Commission actions promulgating rules. That provision of the Hobbs Act encompasses "all final orders of the [AEC] made reviewable by section 2239 of title 42." 28 U.S.C. § 2342(4). Section 2239 is divided into two subsections. Subsection (a), among other things, requires NRC hearings "in any proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees[.]" 42 U.S.C.§ 2239(a)(1)(A). And subsection (b), in turn, makes *"any"* final order in *"any"* of those proceedings identified in subsection (a) reviewable. *Id*. § 2239(b)(1) (emphasis added). Section 2239(b) undoubtedly contemplates a "final order" being issued in each of the types of proceedings in subsection (a) to effectuate the subject of the action for which a hearing is required, including proceedings for the issuance of rules "dealing with the activities of licensees," 42 U.S.C § 2239(a). Therefore, "final orders" in rulemaking proceedings are among those "made reviewable by section 2239" and thus subject to "exclusive" Hobbs Act jurisdiction. 28 U.S.C. § 2342(4).

The Supreme Court has held that Hobbs Act exclusive jurisdiction encompasses challenges to agency actions promulgating rules. In *United States v. Storer Broadcasting Company*, 351 U.S. 192 (1956), a broadcasting company challenged a Federal Communications Commission ("FCC") regulation limiting the number of broadcast stations that may be owned by one company. The broadcasting company had sought judicial review of the rule in the D.C. Circuit under the Hobbs Act. *Id*. at 195. The Court held that Hobbs Act jurisdiction to seek review of the FCC action adopting the "challenged regulations" was proper. *Id*. at 197.[1] Justice Harlan alone held the

---

[1] At the time of the Supreme Court's decision in *Storer Broadcasting*, the Hobbs Act provisions were codified at 5 U.S.C. § 1031, *et seq. Compare* 5 U.S.C. § 1034 (1952), *with* Pub. L. No. 81-901 § 2, 64 Stat. 1129 (1950), *and* 28 U.S.C. § 2342.

dissenting view that not every agency "action in the form of a regulation [is] considered to be an 'order[.]'" *Id.* at 207. And insofar as Plaintiffs insist that Justice Harlan's dissenting view was the correct one, "irrational consequences" follow. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 742 (1985) (describing as "irrational" the notion that "final orders in . . . informal [NRC] rulemaking authorized in § 2239(a) would be reviewed initially in the district court"); *see also id.* at 743 (discussing such "implausible" consequences).

History confirms that Hobbs Act exclusive jurisdiction over "final orders" encompasses facial challenges to Commission actions promulgating rules. Under the pre-Hobbs Act scheme for judicial review of "orders" made by agencies now subject to the Hobbs Act, the Supreme Court construed review of "orders" to encompass review of agency actions promulgating rules. The Urgent Deficiencies Act conferred on specially constituted district courts "exclusive jurisdiction" over suits to "enjoin, set aside, annul, or suspend" specified agency "order[s]." Commerce Court Act, Pub. L. No. 61-218, 36 Stat. 539-540 (1910) (vesting that jurisdiction in a special commerce court); *see* Urgent Deficiencies Act, Pub. L. No. 63-32, 38 Stat. 208, 219-220 (1913) (abolishing the commerce court and transferring its jurisdiction to three-judge district courts); *see also* 28 U.S.C. 44-48 (1934).

In applying that exclusive-jurisdiction provision, the Supreme Court held that "regulations . . . are orders reviewable under the Urgent Deficiencies Act." *Columbia Broad. Sys. v. United States*, 316 U.S. 407, 417 (1942) ("*CBS*"). The Court also construed provisions of a statute applying the Urgent Deficiencies Act review procedures to suits seeking judicial review of "any order" of the FCC. 47 U.S.C. § 402(a) (1940). The Court held that agency actions promulgating regulations "are appropriately the subject of attack [as orders] under [those] provisions . . . and the Urgent Deficiencies Act." *CBS*, 316 U.S. at 418-19.

The scope of a reviewable "order" under the Hobbs Act carries forward these interpretations. Congress enacted the Hobbs Act in 1950, following a request by Chief Justice Stone to reform the judicial review procedures that had applied under the Urgent Deficiencies Act,

7

replacing specially constituted district court review with direct review in the courts of appeals. *See* H.R. Rep. No. 81-2122 (1950), *reprinted in* 1950 U.S.C.C.A.N. 4303. The Supreme Court's construction of the scope of a reviewable "order" under the Urgent Deficiencies Act thus provides "[t]he legal 'backdrop against which Congress enacted'" the Hobbs Act. *See Tanzin v. Tanvir*, 592 U.S. 43, 48 (2020) (citation omitted). And "when Congress 'adopt[s] the language used in [an] earlier act,' [courts] presume that Congress 'adopted also the construction given by [the Supreme] Court to such language, and made it a part of the enactment.'" *Georgia v. Public.Resource.Org, Inc.*, 590 U.S. 255, 270 (2020) (citation omitted). Congress brings "the old soil with it." *Stokeling v. United States*, 586 U.S. 73, 80 (2019) (citation omitted); *see also* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts, 322-26 (2012) (describing prior-construction canon).

Other provisions of the Hobbs Act confirm that reviewable orders may encompass agency actions promulgating rules. The statute provides that: "[o]n the entry of a final order reviewable under this chapter, the agency shall promptly give notice thereof by service or publication in accordance with its rules." 28 U.S.C. § 2344. If "a final order reviewable under this chapter" only encompassed the final disposition of adjudications, then notice by service on the parties would have been sufficient. *Id.* Congress's inclusion of service "or publication" shows that it contemplated agency actions, like rules, that use publication in the Federal Register to provide notice to those affected. *See* 44 U.S.C. § 1507; 5 U.S.C. § 553.[2]

---

[2] In 1975, Congress provided for Hobbs Act jurisdiction over challenges to Interstate Commerce Commission ("ICC") "rules, regulations, or final orders[.]" Pub. L. No. 93-584, § 4, 88 Stat. 1917 (1975) (codified at 28 U.S.C. § 2342(5) (changed to the Surface Transportation Board in 1995)). Since then, Congress expanded Hobbs Act jurisdiction to encompass challenges to "all rules, regulations, or final orders[,]" Judicial Improvements Act of 1985, Pub. L. No. 99-336, § 5, 100 Stat. 633, 638 (1986) (codified at 28 U.S.C. § 2342(3)), or "all final agency actions," Rail Safety Enforcement and Review Act, Pub. L. No. 102-365, § 5, 106 Stat. 972, 975 (1992) (codified at 28 U.S.C. § 2342(7)), of other agencies. These enactments in no way repudiate the Supreme Court's

Consistent with *CBS*, *Storer Broadcasting*, *Florida Power & Light*, and for other reasons as well, it is "blackletter administrative law that, absent countervailing indicia of congressional intent, statutory provisions for direct review of orders encompass challenges to rules." *N.Y. Republican State Comm. v. SEC*, 799 F.3d 1126, 1129 (D.C. Cir. 2015); *see also Texas v. United States*, 749 F.2d 1144, 1146 (5th Cir. 1985) (quoting *Functional Music, Inc. v. FCC*, 274 F.2d 543, 546 (D.C. Cir. 1958)) (The Hobbs Act's "statutory time limit restricting judicial review of [agency] action is applicable . . . to cut off review directly from the order promulgating a rule."). And a plaintiff seeking to challenge a Hobbs Act agency action in district court must satisfy a clear statement rule. Specifically, the plaintiff must show a "firm indication that Congress intended to locate initial APA review of agency action in the district courts[.]" *Fla. Power & Light*, 470 U.S. at 745.

Plaintiffs come nowhere close to satisfying that clear statement rule. Their ahistorical argument that Congress divested the courts of appeals of initial review jurisdiction over the final disposition of Commission rulemaking proceedings, Am. Compl. ¶ 46 (arguing that an "order" may only be issued in "matter[s] other than rule making") (citation omitted), is rendered implausible by provisions in Section 2239(b) itself. For example, "final order[s]" that are explicitly made reviewable by that section include a "final order *establishing by regulation* standards to govern the Department of Energy's gaseous diffusion uranium enrichment plants[.]" 42 U.S.C. § 2239(b)(3) (emphasis added). So the term "final order" as used in § 2239 undoubtedly

---

prior construction of Hobbs Act reviewable orders as encompassing agency actions promulgating rules. "Legislative revision of law clearly established by judicial opinion ought to be by express language or by unavoidably implied contradiction." Scalia & Garner, Reading Law 331 (2012). And no such express language or unavoidably implied contradiction exists here. Rather, Congress merely "made specific what is already assumed by litigants and the courts—rules and regulations of the ICC are reviewed in the same judicial tribunal which has jurisdiction to review adjudicated orders of that agency." S. Rep. No. 93-500, 93d Cong., 1st Sess. 4 (1973). *See also Conoco, Inc. v. Skinner*, 781 F. Supp. 298, 311 (D. Del. 1991) (explaining that "Congress wanted to sharpen the intended coverage of the Hobbs Act by explicitly listing the previously inferred terminology"), *aff'd* 970 F.2d 1206 (3d Cir. 1992). Again, a contrary view is undermined by 28 U.S.C. § 2344, which refers to all reviewable Hobbs Act agency actions as "final order[s]" regardless of which paragraph of 28 U.S.C. § 2342 they fall under.

9

includes the final disposition of rulemaking proceedings.  And § 2239(b)(1) refers to "[a]ny final order entered in *any* proceeding of the kind specified in subsection (a)[,]" including "any proceeding for the issuance or modification of rules and regulations dealing with activities of licensees," *id*. § 2239(a) (emphasis added).  In light of that generally applicable language and the background presumptions of direct review, it would be "irrational," *Fla. Power & Light*, 470 U.S. at 742, to construe only *some* of the proceedings of section 2239(a) for direct review, while assigning others of those provisions to district court review in the first instance.  *See* Scalia & Garner, Reading Law 331 (2012) (addressing presumption of consistent usage).  Indeed, the Supreme Court has confirmed that "Commission rulemaking authorized in § 2239(a)" culminates in a "final order" made reviewable under § 2239(b).  *Fla. Power & Light*, 470 U.S. at 742 (referring to "final orders in summary proceedings and informal Commission rulemaking authorized in § 2239(a)").

Unsurprisingly, Plaintiffs' entire argument that the term "order" in either the Hobbs Act or § 2239(a) categorically excludes the final disposition of rulemaking proceedings is premised on a distortion of statutory language.  Am. Compl. ¶ 46.  Plaintiffs argue that Congress implicitly "adopt[ed] the APA's definitions" throughout the entirety of the Atomic Energy Act, *id*., rather than relying on the plain meaning of the term or the meaning that "members of the bar practicing in th[is] field" would have understood in the judicial review context given interpretative history, *see* Scalia & Gardner, Reading Law 324 (2012), *see supra* at p. 7-9.  But the statutory provision Plaintiffs cite references only two terms from the APA—"agency" and "agency action[.]"  42 U.S.C. § 2231(a).  Noticeably absent from that list is the APA's definition of the term "order" itself.  Indeed, "the word 'order' has several frequently utilized meanings which vary in scope, and it is therefore not surprising that different sections of the same statute[,]" let alone different statutes, "might use the word in different ways."  *Inv. Co. Inst. v. Bd. of Governors of the Fed. Rsrv. Sys.*, 551 F.2d 1270, 1278 (D.C. Cir. 1977) (rejecting argument that APA definition of "order" is controlling under similar review scheme).

The conclusion that the Hobbs Act applies to the final disposition of NRC rulemaking proceedings comports with the conclusion of *all* courts of appeals to have considered the issue in connection with challenges to NRC rules. *See, e.g.*, *Public Watchdogs v. S. Cal. Edison Co.*, 984 F.3d 744, 758 (9th Cir. 2020) (district court lacked jurisdiction to review challenge, issued by NRC through rulemaking, to "Certificate of Compliance" for design of spent nuclear fuel storage system); *Citizens Awareness Network v. United States*, 391 F.3d 338, 346 (1st Cir. 2004) (rules concerning practice in NRC adjudicatory proceedings reviewable in courts of appeals); *Gage v. AEC*, 479 F.2d 1214, 1218 (D.C. Cir. 1973) (noting, in deeming rule subject to Hobbs Act, that "[t]he clear words of the statutes involved make no distinction between orders which promulgate rules and orders in adjudicative proceedings"); *see also Commonwealth Edison Co. v. NRC*, 830 F.2d 610, 615 (7th Cir. 1987) (noting "the growing understanding that regulations and rules were reviewable 'orders' under the Hobbs Act"); *NRDC v. NRC*, 666 F.2d 595, 601 n.40 (D.C. Cir. 1981) (parties agreed that challenge to NRC regulations time-barred under the Hobbs Act); *Westinghouse Elec. Corp. v. NRC*, 598 F.2d 759, 765 n.21 (3d Cir. 1979) (finding "erroneous" the "premise that the provisions governing review of administrative orders adopt the same definition of the term, 'order' as found in the APA"); *NRDC v. NRC*, 539 F.2d 824, 836 (2d Cir. 1976) ("[N]o distinction exists for review purposes between agency adjudications and other pronouncements, such as rulemaking."), *vacated as moot*, 434 U.S. 1030 (1978); *Siegel v. AEC*, 400 F.2d 778, 785 (D.C. Cir. 1968); *cf. Nuclear Energy Inst. Inc. v. EPA*, 373 F.3d 1251, 1264-65 (D.C. Cir. 2004) (finding Hobbs Act jurisdiction to review promulgation of rule by Environmental Protection Agency under authority transferred from AEC).

Moreover, the Fifth Circuit has recognized that the Hobbs Act provides for jurisdiction in the courts of appeals over challenges to NRC regulations. In *Mississippi Power & Light Company v. Nuclear Regulatory Commission*, 601 F.2d 223 (5th Cir. 1979), the court exercised original jurisdiction over a challenge to an NRC "final rule" establishing a fee schedule. *Id*. at 226. Likely because it is "blackletter administrative law[,]" *N.Y. Republican State Comm.*, 799 F.3d at 1129,

the court did not even question its jurisdiction to review the final rule. *See Commonwealth Edison*, 830 F.2d at 613 (noting that while the *Mississippi Power & Light* court did not discuss "initial review jurisdiction, [it was] of course under the same obligation [as any court] to satisfy [itself] of subject-matter jurisdiction before proceeding to the merits").

District courts have uniformly reached the same conclusion as well. *See Izaak Walton League of Am. v. Schlesinger*, 337 F. Supp. 287, 291 (D.D.C. 1971) ("The revised . . . rules and regulations in issue specify the procedures involved in the issuance of operating licenses. . . . A review of [the revisions], in accordance with the statute, lies exclusively in the Court of Appeals."), *vacated by settlement*, 2 Envtl. L. Rep. 20,388 (Dec. 17, 1971); *see also Michigan v. United States*, 773 F. Supp. 997, 1004 (W.D. Mich. 1991) ("In order to challenge the regulations plaintiff must petition the NRC and seek judicial review in the court of appeals."); *accord Nader v. Ray*, 363 F. Supp. 946, 955 (D.D.C. 1973); *Util. Workers Union of Am. v. NRC*, 664 F. Supp. 136, 137 (S.D.N.Y. 1987); *Sunflower Coal. v. NRC*, 534 F. Supp. 446, 448 (D. Colo. 1982). Plaintiffs cannot show a "firm indication that Congress intended to locate initial APA review" in the district court of all Commission actions promulgating rules. *Fla Power & Light*, 420 U.S. at 745. Ultimately, the "exclusive jurisdiction" of the courts of appeals to review NRC "final orders" under 28 U.S.C. § 2342(4) encompasses agency actions promulgating rules given Congress's explicit incorporation of the final disposition of agency "proceeding[s] for the issuance or modification of rules and regulations dealing with the activities of licensees," 42 U.S.C § 2239(a). *Supra* at p. 5; *Fla. Power& Light*, 470 U.S. at 742.

### B. The Final Commission Action that Plaintiffs Challenge Was Issued in a Proceeding for the Issuance or Modification of Rules and Regulations Dealing With the Activities of Licensees.

There is no merit to Plaintiffs' second argument that Congress has divested the courts of appeals of exclusive jurisdiction over their claims in this case. There, Plaintiffs alternatively argue that this case is not subject to the Hobbs Act because "the challenged regulation does not 'deal[] with the activities of licensees[.]" Am. Compl. ¶ 46 (quoting 42 U.S.C. § 2239(a)(1)(A)). This argument is meritless for at least two reasons.

At the outset, the issue is not whether the regulatory definition of utilization facility deals with the activities of licensees. *See id.* Rather, it is whether this case seeks review of a "final order entered in" a "proceeding for the issuance or modification of rules and regulations dealing with the activities of licensees[,]" 42 U.S.C. § 2239(a), (b), even if other "ancillary" issues are wrapped up in that proceeding, *Fla. Power & Light*, 470 U.S. at 743. As the Supreme Court has explained, Congress "define[d] the scope of initial court of appeals review according to the subject matter of the Commission action[.]" *Fla. Power & Light*, 470 U.S. at 737. Here, the final Commission action at issue addressed not only the definition of utilization facility, but dozens of other provisions dealing with the activities of licensees as well. 21 Fed. Reg. at 355-60. The challenged 1956 final Commission action revised 10 C.F.R. Part 10—titled "[l]icensing of production and utilization facilities"—in its entirety. *Id.* Among the core changes are provisions describing conditions of licenses. *Id.* at 359 (codifying 10 C.F.R. § 50.54). Plaintiffs' interpretation (which itself is wrong for the reasons stated *infra*) would therefore mean bifurcated judicial review between the courts of appeals and district courts in cases like this one involving one proceeding for the issuance of a rule or regulation. And the Supreme Court has held that this type of bifurcated review is impermissible under § 2239. *Fla. Power & Light*, 470 U.S. at 743; *see also Crown Simpson Pulp Co. v. Costle*, 445 U.S. 193, 193-97 (1980) (courts are "unwilling to read [similar statutes] as creating such a seemingly irrational bifurcated system"); *Suburban O'Hare Comm'n v. Dole*, 787 F.2d 186, 192-93 (7th Cir. 1986) (holding that district court jurisdiction is impermissible to review final agency action involving three orders reviewable in the courts of appeals and one in the district court); *Gen. Elec. Uranium Mgmt. Corp. v. Nat'l Fed. of Blind v. U.S. Dep't of Transp.*, 78 F. Supp. 3d 407, 410 n.2 (D.D.C. 2015) (when "at least part of [a] regulation was promulgated pursuant to the authority" vesting initial review in the courts of appeals, district court jurisdiction improper). If the provisions of the final Commission action published at pages 355-60 of volume 21 of the Federal Register are not rules and regulations dealing with the activities of licensees, it is difficult to imagine what would qualify.

Even if this Court narrowly analyzes only whether the regulatory definition of the term "utilization facility" is a "rule[ or] regulation[] dealing with the activities of licensees," 42 U.S.C. § 2239(a)(1)(A), Plaintiffs' reading fails because it is based on a profound misunderstanding of the statute. "[T]he Supreme Court has recognized that 'dealing with' is a 'broad term[.]'" *United States v. Menendez*, 440 Fed. App'x 906, 911 (11th Cir. 2021) (citation omitted). By invoking that broad term as part of the phrase "dealing with the activities of licensees," Congress did not limit the statute's application to rules "whose 'sole' or 'prevailing' purposes" relate to the activities of licensees, as Plaintiffs suggest, *Cf. Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv.*, 541 F. Supp. 2d 95, 96 (D.D.C. 2008) (addressing provisions of the Postal Reorganization Act using the term "dealing with"). Rather, "[t]he dictionary definition of 'dealing with' is 'to be concerned[.]'" *Menendez*, 440 Fed App'x at 911 (quoting *Webster's II New Riverside Univ. Dictionary* 350 (1984)). And the agency's determination that a self-sustaining chain nuclear fission reaction is capable of being significant to the common defense and security or capable of affecting the health and safety of the public—and that persons seeking to operate an apparatus utilized to sustain such a fission reaction must obtain a federal license absent an exemption, 21 Fed. Reg. at 356 (codifying 10 C.F.R. §§ 50.2, 50.10, 50.12), is undoubtedly concerned with the activities of licensees, even if it draws a line between persons that need a license and those that do not. By analogy, a provision of a vehicle code that says that "the following persons need a driver license to drive on the highway" concerns the activity of licensees, even if the provision draws the line between drivers needing a license and those who do not.

Context confirms that reading. Recall that § 2239(a) not only has implications for judicial review under the Hobbs Act but principally sets forth a "statutory hearing requirement." *Fla. Power & Light*, 470 U.S. at 733-34. In the context of informal Commission rulemaking, that requirement is satisfied "by notice and comment procedures." *Id*. at 742 n.10; *see Siegel v. AEC*, 400 F.2d 778, 785-86 (D.C. Cir. 1968). Plaintiffs are therefore necessarily arguing that Congress exempted from the § 2239(a)(1)(A) hearing requirement proceedings for the weighty issue of

"whether a person must apply for a[n NRC] license at all." Am. Compl. ¶ 46. Rather than that implausible interpretation, § 2239(a)(1)(A)'s hearing requirement is best read in harmony with the notice-and-comment requirements of the APA. 5 U.S.C. § 553. *See Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 511 (2018) (statutes should be interpreted "aiming for harmony"). In other words, the type of rules exempt from the statutory hearing requirement under § 2239(a)(1)(A) will typically be those "relating to agency management or personnel or to public property, loans, grants, benefits or contracts." 5 U.S.C. § 553(a)(2). These are rules that do not deal with—or are not concerned with—the activities of licensees. There is no "plausible justification," *see Fla. Power & Light*, 470 U.S. at 743 to separate review provisions that define the scope of the licensure requirement and those that define the responsibilities of licenses—all deal with "activities" of licensees.

\*\*\*

In sum, Plaintiffs' claims should be dismissed for lack of subject-matter jurisdiction because they challenge a "final order" issued in a "proceeding for the issuance" of an NRC "rule[] [or] regulation[] dealing with the activities of licensees," 42 U.S.C. § 2239(a)(1)(A), (b)(1), and such challenges are ones over which Congress has conferred "exclusive jurisdiction" in the courts of appeals, 28 U.S.C. §§ 2342, 2343. Plaintiffs cannot demonstrate "a firm indication that Congress intended to locate initial APA review of [the challenged] agency action in the district courts[.]" *Florida Power & Light*, 470 U.S. at 745. And Plaintiffs may not "circumvent[] . . . the exclusive jurisdiction set forth by Congress" in the Hobbs Act. *Ligon*, 614 F.3d at 157 n.4.

## II. In the Alternative, Even if the Court Had Jurisdiction, Plaintiffs Cannot Establish Venue Based Solely on Texas's Residence Because Texas is not a Proper Plaintiff.

### A. Texas's Claims are Time-Barred.

Even if the Hobbs Act did not preclude this lawsuit, the six-year statute of limitations applicable to the APA would bar Texas's claims. *See* 28 U.S.C. § 2401(a) (stating "every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues").[3]

Parties can challenge regulations in several ways. Those include a facial challenge, *i.e.* a claim that the regulation is invalid in whole or in part, or as an as-applied challenge, *i.e.*, defending against an enforcement action on the grounds that the applicable regulation is invalid. *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 823-24 (2024); *Texas*, 749 F.2d at 1146. Texas brings a facial challenge to the agency's 1956 determination that a "utilization facility" includes "any nuclear reactor other than one designed or used primarily for the formation of plutonium or U[ranium]-233." 21 Fed. Reg. at 356. Am. Compl. ¶¶ 235-76. Texas's claims do not arise in the context of judicial review of any NRC order applying that rule to the state's particular circumstance. *See Texas*, 749 F.2d at 1146.

Texas's right of action accrued for purposes of the APA statute of limitations when it first had a right to bring a suit challenging the regulation, *Corner Post*, 603 U.S. at 809-13, either when

---

[3] Defendants' argument that Texas is not a venue-creating Plaintiff because its claims are time-barred by the APA statute of limitations is made in the alternative should the Court conclude that the Hobbs Act does not divest this Court of jurisdiction over Plaintiffs' claims. To be sure, Plaintiffs' claims would also be time-barred even if they had been brought in the courts of appeals under the Hobbs Act, as they were not raised within sixty days of the promulgation of the agency's rule. 28 U.S.C. § 2344; *Texas*, 749 F.2d at 1146; *Chem-Haulers, Inc. v. United States*, 536 F.2d 610, 613 (5th Cir. 1976). Plaintiffs could not find safe harbor from that sixty-day window by relying on *Corner Post v. Board of Governors of the Federal Reserve System*. 603 U.S. 799 (2024). The Supreme Court made clear in *Corner Post* that its analysis did not apply to statutes of *repose* "like the Hobbs Act," as opposed to statutes of *limitations* such as those set forth in the APA. *Id.* at 812-13; *see also San Luis Obispo Mothers for Peace v. NRC*, No. 23-3884, 2025 WL 233640, at *1 (9th Cir. Jan. 17, 2025) ("As a 'defendant-protective statute of repose,' the Hobbs Act bars 'any suit that is brought [after the ] specified time frame . . . even if this period ends before the plaintiff has suffered a resulting injury.'" (quoting *Corner Post*, 603 U.S. at 812-13)).

the rule was published in 1956, or, at the latest, when Texas began operating a nuclear reactor in 1957 that was subject to the challenged rule. *See* Am. Compl. ¶ 118. Texas's own allegations demonstrate that its right to bring any facial challenge to the regulatory definition of "utilization facility" plainly accrued long before 2018, six years before this action was filed. *See id.* ¶ 29 (describing the subject of this suit as the definition of "utilization facility" issued in the 1950s); *id.* ¶¶ 117-18 (explaining that Texas has maintained operating licenses for three reactors since 1992, 1961, and 1957,[4] respectively). Therefore, Texas's claims should be dismissed because they are time-barred.

Notwithstanding the untimeliness of this lawsuit (whether due to the APA statute of limitations or the time specified in the Hobbs Act), Plaintiffs are not foreclosed from raising their arguments concerning the agency's definition of "utilization facility" and seeking judicial review of the agency's resolution of their arguments. Plaintiffs may petition the NRC, arguing that the agency's definition of "utilization facility" is contrary to law. 10 C.F.R. §§ 2.800-2.818. And if dissatisfied with the result of such a petition, they could file a petition for review of the decision challenging the legal interpretation underlying the rule. *See*, *e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 528-33 (2007); *NRDC*, 666 F.2d at 602 (courts "scrutinize[] regulations immune from direct review by reviewing the denial of a subsequent rulemaking petition which challenged the regulations on demonstrable grounds of substantive invalidity"); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024) (explaining that "courts decide legal questions by applying their own judgment" arising on judicial review of agency actions). Or they could seek an exemption from any or all of the agency's licensing requirements for utilization facilities, with attendant opportunities for judicial review if their request is denied. *See* 10 C.F.R. § 50.12. But as raised here, Texas's claims are time-barred and should be dismissed.

---

[4] The Amended Complaint incorporates by reference NRC websites that include the date that each operating license was issued. Am. Compl. ¶¶ 117-18.

17

### B. Venue is Improper in this District Because Texas's Claims are Time Barred.

Once Texas's claims are dismissed, the rest follows as a matter of course. Rule 12(b)(3) calls for dismissal of an action if venue is "improper." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). And where, as here, the case is brought against "an agency of the United States," venue is proper only in a "judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e)(1). "Once a defendant raises a 12(b)(3) motion to dismiss for improper venue, the burden of sustaining venue lies with the plaintiff." *Langton v. Cbeyond Commc'n, LLC*, 282 F. Supp. 2d 504, 508 (E.D. Tex. 2003); *accord* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3826 (4th ed. 2024).

Plaintiffs' only theory of venue for its APA claims depends entirely on Texas's residence. *See* Am. Compl. ¶ 45. Specifically, they claim that venue is proper here only because "the State of Texas is a resident of this judicial district[.]" *Id*. Accordingly, because Texas's claims are time barred, there is no basis for venue in this district: no defendant resides here, *see* 28 U.S.C. § 1391(e)(1)(A); none of the "events or omissions giving rise to the claim occurred" here, *id*. § 1391(e)(1)(B); and no (proper) plaintiff resides here, *see id*. § 1391(e)(1)(C). Without a doubt, Utah, Louisiana, Florida, and the Arizona State Legislature, do not reside in the Eastern District of Texas. And the Amended Complaint does not plausibly allege that any private Plaintiff "maintains its principal place of business" here. *Id*. § 1391(c)(2) (defining residency for all venue purposes as, for a non-natural person, "if a plaintiff, only in the judicial district in which it maintains its principal place of business[.]").

A plaintiff cannot be joined for the purpose of creating venue where it would not otherwise exist. *See Miller v. Albright*, 523 U.S. 420, 426-27 (1998) (op. of Stevens, J.) ("[T]he District Court concluded that Mr. Miller did not have standing and dismissed him as a party. Because

venue in Texas was therefore improper, *see* 28 U.S.C. § 1391(e), the court transferred the case to the District Court for the District of Columbia, the site of the Secretary's residence."); *Ga. Republican Party v. SEC*, 888 F.3d 1198, 1202-05 (11th Cir. 2018) (transferring case where the only party that satisfied venue failed to establish standing); *Immigrant Assistance Project v. INS*, 306 F.3d 842, 867 n.20 (9th Cir. 2002) (analyzing standing of particular plaintiff was "important because it is the only plaintiff . . . who is a resident of Washington and on whom, therefore, venue in the Western District of Washington could be based"); *Missouri v. U.S. Dep't of Educ.*, No. CV 224-103, 2024 WL 4374124, at *4 (S.D. Ga. Oct. 2, 2024) ("[w]ithout standing, Georgia cannot provide the proper venue for suit"); *Dayton Area Chamber of Com. v. Becerra*, No. 3:23-cv-156, 2024 WL 3741510, at *8 (S.D. Ohio Aug. 8, 2024) ("Because the Court has determined that the Dayton Area Chamber must be dismissed due to lack of standing, venue is no longer proper in the Western Division of the Southern District of Ohio."); *Kansas v. Garland*, No. 2:24-CV-00088, 2024 WL 2384611, at *3 (E.D. Ark. May 23, 2024) ("Having found that the State of Arkansas does not have standing to proceed in this action, venue is improper in this Court."); *Mich. Ass'n of Pub. Sch. Acads. v. U.S. Dep't of Educ.*, 711 F. Supp. 3d 686, 693 (W.D. Mich. 2024) (after concluding that the venue-creating plaintiff "lacks standing," holding that "the Western District of Michigan is no longer" an appropriate venue); *Inst. of Certified Pracs., Inc. v. Bentsen*, 874 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("Having found that the Institute lacks standing to bring this action and has failed to state a claim upon which relief can be granted, plaintiff cannot manufacture venue by adding the Institute as a party."); *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1304 (N.D. Ala. 2003) ("Venue is proper in this court because at least one Alabama plaintiff had standing."); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 3815 (4th ed. 2024) ("[V]enue cannot be based on the joinder of a plaintiff" that has been added "for the purpose of creating venue in the district.").

If that were not the rule, then any plaintiff could enlist any resident of any venue with a time-barred claim to serve as a nominal plaintiff, solely to circumvent venue requirements—a

result that would encourage forum shopping and undermine the federal venue statute. Accordingly, upon dismissal of Texas's claims, the entire case should be dismissed for lack of venue.[5]

## CONCLUSION

For the reasons stated above, the Amended Complaint should be dismissed.

Dated: April 28, 2025

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General

JOSEPH E. BORSON
Assistant Branch Director

 /s/ Liam C. Holland
LIAM C. HOLLAND
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 514-4964
Fax: (202) 616-8470
E-mail: Liam.C.Holland@usdoj.gov

*Attorneys for Defendant*

---

[5] Venue is improper if Texas is an improper Plaintiff for any reason. For example, if the Court were to conclude that, for some reason, only Texas's claims are within the exclusive jurisdiction of the courts of appeals under the Hobbs Act, venue would not be proper in this district to address any other Plaintiff's claims.